In the Matter of the Proceeding by the CITY OF SYRACUSE to Acquire Title to Lands of WILLIAM J. EASTMAN for Waterworks System.

Supreme Court, Onondaga County, June 12, 1930.

*Frank P. Malpass, Corporation Counsel* [*Mark E. Conan* of counsel], for the city of Syracuse.

*Harry H. Stone* [*Walter Welch* of counsel], for William J. Eastman.

Ross, Official Referee. The city of Syracuse has constructed a reservoir near the west line of said city (I believe now is in the city) for storage and distribution of water for the use of the inhabitants of said city, and seeks by methods provided by law to acquire certain premises owned by Eastman for the purpose of laying upon said premises a supply pipe from the aforesaid reservoir connecting the same with the waterworks system now existing.

The owner, Mr. Eastman, answers, stating thirteen different reasons why the city should not have the right to condemn his property as sought herein.

The petitioners heretofore presented to the court a petition alleging the ordinary judicial facts essential to such an application. The defendants served an answer consisting of thirteen separate defenses, one of which, the thirteenth, was a general denial.

The matters contained in the aforesaid pleadings were presented to Justice CLAYTON I. MILLER at Special Term, and said justice referred the matter to the undersigned as referee, " to hear the allegations and proofs of the parties and to determine the issues," this pursuant to the provisions of section 11 of the Condemnation Law and the acts amendatory thereto.

Upon the hearing before Mr. Justice MILLER, the defendant also appeared specially and filed some seven objections to the jurisdiction of the court to entertain this application.

The learned justice overruled the aforesaid objections and made an order of reference.

The fourth specific objection filed by the defendant alleged, in substance, that there is no necessity for the petitioner to acquire the land sought for the purpose set forth in the petition; and the defendant in his fifth specific objection denies that he has been unable to agree with the petitioner for the purchase of the premises sought to be acquired, and alleges that the petitioner has not made any effort to purchase defendant's land.

Mr. Justice MILLER, on the 7th of April, 1930, made an order, in part, as follows: " Preliminary objections filed by defendant overruled."

It would seem that at least as to the two important matters, i. e., the necessity for taking defendant's land and also the claim of defendant, the petition does not show that the petitioner has been unable to agree with the defendant for the purchase of his land.

Are the identical matters already decided by Mr. Justice MILLER? If not, suppose I should report that the position of the defendant in regard to these two matters is correct, i. e., that no necessity for acquiring defendant's land is shown and no specific effort to pur-

chase the same has been made, and, upon the presentation of my report to Mr. Justice MILLER, he would be confronted with the alternative of overruling his former decision or the decision of the referee to whom he had sent the matter. I assume that the latter would be easy; the former more difficult. The whole situation is illogical and clearly in my judgment has been correctly disposed of by the learned justice, but, not to shirk any possible duty, I will assume that the matter remains open and state my reasons for the position I take.

As stated by Judge ALLEN in *Matter of New York & H. R. R. Co. v. Kip* (46 N. Y. 546, 551): "The right of eminent domain, which is but a right of the people or government to resume the possession of lands for public use, and subject to which right property is always held, may be delegated to individuals, corporations or municipalities for like use."

Although the right of eminent domain is contrary to the strict constitutional rights of the individual and can only be invoked for a public purpose, without the right of eminent domain the owner of a worthless scrub lot or swale might stop the building of a transcontinental railroad or prevent a municipality from obtaining a necessary supply of water essential to the life and health of its inhabitants. But when such right to take property for a public use arises, a liberal consideration should be given in favor of the municipality in the various steps essential to the exercise of such right.

The defendant cites *Matter of Bronx Parkway Commission* (176 App. Div. 717). This action was brought by the Bronx parkway commission for the purpose of condemning certain lands pursuant to the provisions of chapter 594 of the Laws of 1907, and the acts amendatory thereof.

The above-cited legislative acts had a definite and special purpose, the acquiring of specified lands as a public park or parkway, and of course the question of necessity was not and could not be presented except as a constitutional question attacking the validity of the act itself.

Section 11 of the aforesaid act, chapter 594 of the Laws of 1907, provides as follows: "The said commissioners may agree with the owner of any real estate or of any easement necessary to be acquired, as to the amount of compensation to be paid to such owner for the taking of said real estate or easement."

On page 720 of 176 App. Div., of the case cited, *Matter of Bronx Parkway Commission*, the following appears: "It appears from the cross-examination of plaintiff's witness, Downer, that on January 11, 1915, as the result of a year's negotiations the commission and

the owner came to an agreement to purchase for the sum of $73,000, subject, however, to the approval of the board of estimate and apportionment of the city of New York and the board of supervisors of Westchester county as to the price. The Commission had the power to make this agreement without reference to the approval of these boards. The act of 1907 under which it was created gave the Commission exclusive power over the subject."

The owner claims that, after a delay of more than nine months, the commission offered $56,000, and, after a wait of only three full days after said offer, of which one was a holiday and one a Sunday, commenced the proceedings herein.

The court held that the action of the commission did not justify the conclusion that the petitioner had been engaged in a *bona fide* offer to agree upon a price with the defendant and had failed because the defendant had not executed it after three days, including New Year's Day and Sunday. (176 App. Div. 721.)

Bear in mind that, in *Matter of Bronx Parkway Commission*, the owner's land was condemned by the terms of the act itself (Laws of 1907, chap. 594, § 1). The only matter remaining open was the question of the price, and it is reasonable that, as a condition pursuant to actually acquiring the land, there should have been a *bona fide* attempt on the part of the Bronx parkway commission to fairly negotiate with the defendant.

As stated on page 721 of the opinion: " It is more than likely that, in view of their opinion in January, 1915, as to the value of the land, by personal negotiation with the owner after the offer of $56,000 was served, they could have met upon some middle ground and come to an agreement as to the price to be paid."

In the instant case the city of Syracuse must show " that the plaintiff has been unable to agree with the owner of the property for its purchase, and the reason of such inability." (Condemnation Law, Laws of 1920, chap. 923, § 4, subd. 5.)

Subdivision 5 of section 4 of the Condemnation Law states as to matters which must be shown by plaintiff in his petition: " That the plaintiff has been unable to agree with the owner of the property for its purchase, and the reason of such inability."

To meet this requirement the city of Syracuse alleges in its petition as follows: " That the plaintiff has been unable to agree with the owner of the property for its purchase in that the appraisal thereof made by the plaintiff's agents is $1,000, and the owner through his attorney announces the value to be $10,000; that said property is of the value of $1,000."

The foregoing allegations are fully met by the evidence. The defendant, in response to his counsel and over the objection of

plaintiff's counsel, testified that he estimates the value of the land without buildings at $15,000.

As I remember, three witnesses for the city stated the value at $1,000. Mr. Joseph M. Meatyard, formerly first assistant corporation counsel for the city of Syracuse, testified that in September, 1929, Mr. Eastman told him that he (Eastman) had already an offer of $10,000, and that he would not sell it for less.

When the owner claims in good faith that his property is worth $10,000, that that amount is his price, and the municipality in good faith says that the property is worth only $1,000, one does not have to draw upon one's imagination to infer that further negotiations would be useless.

Judge ALLEN, in *Matter of Marsh* (71 N. Y. 318), quoting from the opinion of Judge FOLGER, writes, alluding to this provision: " It means that the owner must be unwilling to sell at all, or willing to sell only at a price so large as, in the good judgment of the agents of the corporation, is excessive." This is precisely the instant case.

The owner in his answer denies specifically that the city desires the property to construct, maintain, extend, control and operate said city waterworks system, and denies that the premises acquired are necessary to avoid two right angle turns in the highway through which said pipe is being laid, and denies that the pipe laid in such turns as alleged in paragraph 3 in petitioner's petition would lose velocity in flow of water through friction, and denies specifically that there is an immediate and paramount necessity for an increased water supply in said city.

The officials of the city have the responsibility for their official action and have a discretionary power as to location which cannot be supervised by the courts (*New York & H. R. Co.* v. *Kip*, 46 N. Y. 546, 553), and the city will have to pay Mr. Eastman for whatever land is taken, and I certainly am not going to decide a disputed question of engineering adverse to the claims of a municipality whose sole purpose is to furnish and distribute water to preserve the health and welfare of its inhabitants.

The usual experience in these matters is that the owner receives in condemnation proceedings more than he would get by private bargain and sale. Mr. Eastman need not lie awake nights for fear that he will not receive as much as his property is worth.

Prepare order in accordance herewith.